**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JILLIAN WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06C1815 |
| | ) | JUDGE HOLDERMAN |
| ABT ELECTRONICS, INC., | ) | Magistrate Judge Nolan |
| | ) | |
| Defendant. | ) | |

**ABT ELECTRONICS, INC.'S RULE 50(A) RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF ALL EVIDENCE**

Defendant, Abt Electronics, Inc. ("Abt"), respectfully requests that this Court enter judgment as a matter of law in its favor pursuant to Fed. R. Civ. P. 50(a), because Plaintiff has failed to present legally sufficient evidence that Abt retaliated against Plaintiff, and, accordingly, no reasonable jury could find in Plaintiff's favor and against Abt. In addition, Abt requests judgment as a matter of law on the issue of punitive damages, because there is no legally sufficient evidentiary basis for a reasonably jury to find that Abt engaged in intentional retaliation with malice or with reckless indifference to the federally protected rights of Plaintiff. In support of this Motion, Abt states as follows:

**I.   LEGAL STANDARD**

1. Fed. R. Civ. P. 50(a) provides, as follows:

    (a) Judgment as a Matter of Law

    (1) If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

        (A) resolve the issue against the party; and

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> (2) Motions. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

2. The standard for granting judgment as a matter of law is the same standard for granting summary judgment. Murray v. Chicago Transit Authority, 252 F.3d 880, 886-887 (7th Cir. 2001).

## II. PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW.

3. Title VII prohibits an employer from retaliating against an employee because that employee has opposed any practice made unlawful by Title VII. 42 U.S.C. §2000e-3(a). Plaintiff claims that her employment was terminated in retaliation for telling one of her supervisors, Gregory Meinholz, to stop sexually harassing her. Plaintiff's claims are legally insufficient for the following reasons.

4. Plaintiff has two routes she can take to attempt to prove retaliation under Title VII – the direct method or the indirect method under McDonnell Douglas burden-shifting approach. See Stone v. Indianapolis Pub. Utils. Div., 281 F.3d 640, 644, cert denied 537 U.S. 879 (2002).

### A. *No Direct Evidence Of Retaliation Exists In This Case.*

5. Under the direct method, Plaintiff was required to present direct evidence that: (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken by the employer; and (3) a causal connection existed between the two. Rhodes v. Illinois Dep't of Transportation, 359 F.3d 498, 505-506 (7th Cir. 2004), citing Stone, 281 F.3d at 644. However, "the Seventh Circuit is clear that temporal proximity between the protected activity and the adverse employment action does not itself create a triable issue." Tomanovich v. City of

Indianapolis and Indiana Department of Transportation, 457 F.3d 656, 665 (7th Cir. 2006); Mazeika, 2006 U.S. Dist. LEXIS 71956 *50-51.

6. Here, although Plaintiff's employment was terminated, she has failed to prove the first and third elements of her *prima facie* case.

### ***1. Plaintiff Did Not Engage In Statutorily Protected Activity, Because Plaintiff Did Not Have A Reasonable, Good Faith Belief That She Was Being Sexually Harassed.***

7. The evidence proves that Plaintiff did not have a reasonable, good faith belief that she was being sexually harassed. The Seventh Circuit has consistently stated that "utterly baseless claims do not receive protection under Title VII." See, Mattson v. Caterpillar, Inc., 359 F.3d 885, 890-91 (7th Cir. 2004). Therefore, Plaintiff failed to prove that she engaged in statutorily protected activity. See, Mattson v. Caterpillar, Inc., 359 F.3d at 890-91 (7th Cir. 2004).

8. Specifically, the direct testimony of three witnesses, including Plaintiff's close friend, Jaclyn Harold, proves that Plaintiff came up with a "fabulous plan" and a "great idea" to sue Abt for sexual harassment in order to get back at Abt for terminating her employment. Ms. Harold testified that Plaintiff expressly stated that she knew that she did not have enough to sue if she only brought a wrongful termination claim, so that she had to "build" a sexual harassment claim in order to "stick it to the store." Ms. Hanley, Plaintiff's former best friend, and Mr. Rzeszutko, Plaintiff's former boyfriend, corroborated Ms. Harold's testimony.

9. Moreover, both Ms. Harold, her close friend and co-worker, and Mr. Rzeszutko, her boyfriend, testified that they never heard Plaintiff complain about sexual harassment until after her termination substantiated the evidence in the record that such claims were fabricated.

10. Because the sexual harassment claim was made-up by Plaintiff, she did not have a reasonable, good faith belief that Gregory Meinholz was sexually harassing her, and her retaliation claim fails as a matter of law.

11. Moreover, Plaintiff herself testified that, although she did not recall calling herself "fatboobs," if she did, she would have used the term in a sarcastic manner throwing it back at someone.

12. As additional evidence that Plaintiff's sexual harassment allegations are groundless is Ms. Harold's testimony that Plaintiff influenced Ms. Harold to change her testimony to provide favorable testimony to help Plaintiff win her case in exchange for a share of any recovery. Plaintiff went so far as to instruct Ms. Harold to lie to prevent her from revealing what could be considered extremely unfavorable evidence.

### 2. *Plaintiff Did Not Present Sufficient Evidence To Connect Her Employment Termination With Her Alleged Complaint.*

13. As to the third element, Plaintiff failed to present evidence connecting her termination and her alleged complaint. Instead, Plaintiff is solely relying on temporal proximity, which is not enough for Plaintiff to survive this Motion for Judgment as a Matter of Law under the direct method.

14. For these reasons, Plaintiff's retaliation claim is legally deficient under the direct method of proof, and Abt is entitled to judgment as a matter of law.

### B. Plaintiff's Retaliation Claim Is Also Legally Insufficient Under The Indirect Method Of Proof.

15. To establish a *prima facie* case under the indirect method of proof, Plaintiff was required to show: (1) she engaged in statutorily protected activity; (2) she was performing her job in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than a similarly situated employee who did not engage in the

statutorily protected activity.  Tomanovich, 457 F.3d at 666; Mazeika, 2006 U.S. Dist. LEXIS at *50; Stone, 281 F.3d at 644.

16. As an initial matter, however, "proof of retaliation under the indirect method presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it 'cannot be trying to penalize him for making them.'"  Tomanovich, 457 F.3d at 668-669, citing Shafer v. Kal Kan Foods, Inc., 417 F.3d 663, 664 (7th Cir. 2005).

17. Here, the evidence is undisputed that Panagiota Sveronis, Plaintiff's immediate supervisor, initiated the decision to terminate Plaintiff's employment.  There is ample testimony in the record of the tardiness and poor attitude problems Plaintiff was having in the Custom Audio Department and that Ms. Sveronis counseled Plaintiff on several occasions.  Although Mr. Meinholz ultimately agreed with the decision, the facts remain undisputed that Ms. Sveronis was asked whether she wanted to let Plaintiff go and she responded "yes."

18. In addition, there is absolutely no evidence that Ms. Sveronis had any knowledge of Plaintiff's alleged claims of sexual harassment until after Plaintiff's termination.  Ms. Sveronis' testimony is uncontradicted that she had no knowledge of such claims until Mr. Peterson interviewed Ms. Sveronis in the course of his investigation of Plaintiff's allegations after Plaintiff's termination.

19. Although Plaintiff satisfied the second element that she was subjected to an adverse employment action, her employment was terminated on January 20, 2005, she did not satisfied the first, second or third elements.

  *1.  Plaintiff Did Not Engaged In Statutorily Protected Activity.*

20. As for the first element, Plaintiff had no good faith basis that she was sexually harassed and therefore, she did not engage in any statutorily protected activity. As set forth above, because Plaintiff made up the sexual harassment claim to get even with Abt for terminating her employment, her claim is utterly baseless, and she has failed to prove that she engaged in statutorily protected activity. See, Mattson v. Caterpillar, Inc., 359 F.3d at 890-91 (7th Cir. 2004).

### 2. *Plaintiff's Job Performance Was Far From Satisfactory.*

21. Moreover, the overwhelming evidence is that Plaintiff was not performing her job to the satisfaction of her employer as fully described above. Plaintiff was consistently tardy. In fact, Plaintiff admitted that she was changing her schedule as frequently as every other day. Moreover, Plaintiff exhibited a poor attitude at work. There is ample testimony from Ms. Sveronis, Ms. Ciccone, and Ms. Hanley of Plaintiff's rude conduct toward Ms. Sveronis regarding Plaintiff not following tasks, openly complaining about Ms. Sveronis to Plaintiff's co-workers and making fun of Ms. Sveronis in the office. Despite being counseled about these deficiencies, which were testified to by Ms. Sveronis and Ms. Ciccone, Plaintiff continued in her misconduct. The last incident of Plaintiff's rude conduct was when she snubbed the new employee by not introducing herself. The record supports the fact that Plaintiff was not performing her job to Abt's expectations.

### 3. *Plaintiff Has Not Shown That Any Comparable Employee, Who Was Not In The Protected Category, Was Treated More Favorably.*

22. Further, Plaintiff also failed to sustain her claim under the last element because no evidence exists that Plaintiff was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. Moreover, there is no evidence that any comparable employee who was not engaged in statutorily protected activity was treated more

favorably than Plaintiff. Plaintiff uses Ms. Amanda Ciccone as the more favorably treated person. However, Ms. Ciccone is part of the protected class, because she herself had complained of sexual harassment. As Ms. Ciccone testified, Abt immediately reacted and resolved the issue. Therefore, Ms. Ciccone also falls with the protected class and is not a comparable.

23. In addition, "perfect enforcement of company rules is hardly to be expected." Crawford v. Indiana Harbor Belt Railroad Company, 461 F.3d 844, 845 (7th Cir. 2006). Members of the comparison group must be comparable to Plaintiff in all material respects. Crawford, 461 F.3d at 846. Crawford also highlighted the materiality of a difference in supervisors as being important, especially in a case such as this where the supervisor has broad discretion in enforcing work rules and issuing discipline. Crawford, 461 F.3d at 847; SOF at ¶¶70-75; see also Metzler v. Federal Home Loan 464 F.3d 1164, 1175-1176 (10th Cir. 2006)(Drawing an inference of pretext is not permissible when the different treatment is by different supervisors – from a past supervisor than the present new supervisor, because the difference may be the result of the different supervisor's reactions.). There is no evidence in the record to prove that any of Plaintiff's co-workers, who reported to Ms. Sveronis and who did not engage in statutorily protected activity, were tardy more often than Plaintiff, and not disciplined.

24. For these reasons, Plaintiff's retaliation claim is legally deficient under the indirect method of proof, and Abt is entitled to judgment as a matter of law.

**C. Plaintiff Failed To Prove That Her Termination Was Based On Illegal Retaliatory Motives Because She Admitted To The Conduct That Formed The Bases For The Discharge.**

25. If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to present evidence of a non-retaliatory reason for its employment action. Tomanovich, 457 F.3d at 663. Here, Plaintiff has failed to establish a *prima facie* case, and,

therefore, the burden does not shift to Abt.  However, even if it did, Plaintiff's claim is legally insufficient because she has admitted to engaging in the underlying conduct that formed the bases for the discharge decision.  Therefore, Plaintiff has not and cannot prove that the underlying reasons were pretextual.  Covello v. City of Chicago, 2006 U.S. Dist. LEXIS 68985 (N.D. Ill. 2006).

26. First, the evidence proves, and Plaintiff does not deny, that she repeatedly would arrive to work after her scheduled time.  Second, Plaintiff further admits that her actions toward a new employee in the department could have been interpreted as being rude.  Third, Plaintiff admitted that she did not get along with her immediate supervisor and that she on several occasions made derogatory comments about her supervisor.  Moreover, Ms. Sveronis had no knowledge that Plaintiff allegedly complained of sexual harassment.  Therefore, Plaintiff cannot attribute any retaliatory motive to Ms. Sveronis.  Although Mr. Meinholz was involved in approving the decision and implementing the decision, Plaintiff had no knowledge as to who was involved in the decision, other than it was Mr. Meinholz that carried out the decision.  In any event, Ms. Harold testified that Plaintiff received disciplinary notices regarding her tardiness prior to the time Plaintiff claims that she made any allegations that she was sexually harassed or that she asked it to stop.

27. Therefore, Plaintiff's claim is legally insufficient and Defendant is entitled to judgment as a matter of law.

### III. DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

28. An award of punitive damages is available under Title VII "when a plaintiff demonstrates that the defendant engaged in intentional discrimination "with malice or with

reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. 1981a(b)(1); Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999).

29. In Kolstad, the Supreme Court provided a three-part framework for determining whether an award of punitive damages was proper under that statutory standard. First, Plaintiff must prove that the employer acted with the requisite mental state. This requires a finding that the employer acted with the knowledge that its actions may violate the employee's rights under federal law. Second, Plaintiff must prove that a basis exists for imputing liability to the employer. Third, even if Plaintiff establishes the first two elements cited above, an employer cannot be held liable for punitive damages if it made a good faith effort to implement and enforce an anti-discrimination policy. Kolstad, 527 U.S. at 858-859.

30. With regard to the first element on the requisite mental state, Plaintiff cannot show that the employer acted with the requisite mental state of acting with the knowledge that its actions may violated Title VII. Indeed, Plaintiff did not present any evidence on this element. The undisputed evidence is that Ms. Sveronis, who initiated the decision to terminated Plaintiff's employment, was not even aware that Plaintiff had complained of sexual harassment until after Plaintiff was terminated. Therefore, Abt could not have known that her actions would have violated Plaintiff's rights under the law. Although Mr. Meinholz agreed with Ms. Sveronis' decision and approved the decision by carrying the termination, the evidence is clear that Ms. Sveronis triggered the events leading to Plaintiff's employment termination.

31. Moreover, there is no evidence that Mr. Meinholz knew that his action of merely approving the decision of Ms. Sveronis to terminate Plaintiff's employment would violate Plaintiff's Title VII rights. Indeed, as the overwhelming evidence shows Plaintiff never complained about any harassment while working at Abt. Therefore, there is no evidence in the

9

record that either Ms. Sveronis or Mr. Meinholz acted in reckless indifference to Plaintiff's rights.

32. In addition, even if Plaintiff did establish the first two parts of the <u>Kolstad</u> analysis, Abt cannot be held liable for punitive damages because it made a good faith effort to implement and enforce an anti-discrimination policy. The undisputed evidence shows that Abt had a Sexual Harassment and Anti-Retaliation Policy in place during the entirety of Plaintiff's employment and that it was distributed to its employees. Jaclyn Harold, Panagiota Sveronis, and Patricia Hanley all testified that they were given a given a copy of the sexual harassment policy and that such a policy is posted on the employee bulletin board.

33. Moreover, such a policy is enforced as evidenced by the immediate investigation conducted by Abt into Plaintiff's allegations. Both Plaintiff and her sister, Jacqueline Watson testified that both Ricky Abt and Phil Peterson expressed that Abt takes sexual harassment allegations very seriously. Indeed, Abt promptly investigated Plaintiff's allegations within 24 hours of receiving Plaintiff's complaint. Moreover, statements were taken at that time. Abt concluded its investigation and reported its findings that there was no merit to her claims. It was only when Plaintiff and her sister heard something they did not want to hear -- that the allegations were not substantiate -- did Plaintiff's sister became irate with Mr. Peterson and started to threatened to file a lawsuit against Abt.

34. Moreover, another example of Abt's enforcement of its sexual harassment and anti-retaliation policy is the testimony of Ms. Ciccone, who had herself complained of harassment. Ms. Cicone testified that Abt immediately took action and the offensive conduct stopped.

35. Therefore, Abt has shown that it has made a good faith effort to implement and enforce a sexual harassment and anti-retaliation policy.

## IV. CONCLUSION

WHEREFORE, Abt Electronics, Inc. respectfully requests that this Court enter judgment as a matter of law in its favor and against the Plaintiff pursuant to Fed. R. Civ. P. 50(a), and that the Court grant such further and additional relief as it deems just and appropriate. Also, Abt requests judgment as a matter of law on the issue of punitive damages, because there is no legally sufficient evidentiary basis for a reasonably jury to find that Abt engaged in intentional retaliation with malice or with reckless indifference to the federally protected rights of Plaintiff.

Dated: February 23, 2007                    Abt Electronics, Inc.


                                            By: _s/ Jennifer A. Naber_____
                                                Jennifer A. Naber, One of Its Attorneys

Jennifer A. Naber
Laner, Muchin, Dombrow, Becker,
 Levin and Tominberg, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60610
(312) 467-9800
(312) 467-9479 (fax)

## CERTIFICATE OF SERVICE

Jennifer A. Naber, an attorney, hereby certifies that, on February 23, 2007, she caused Abt Electronics, Inc.'s Second Rule 50(a) Motion For Judgment As A Matter Of Law in the above-captioned matter to be filed with the Clerk of the District Court and served on the party of record listed below, by operation of the Court's CM/ECF electronic filing system, addressed to:

>Alejandro Caffarelli
>Jessica Fayerman
>Caffarelli & Siegel Ltd.
>Two Prudential Plaza
>180 North Stetson, Suite 3150
>Chicago, Illinois 60601
>Telephone: (312) 540-1230

/s/Jennifer A. Naber
Jennifer A. Naber